UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

NISHAM NASIR,
    also known as "Saleen"
    and "Nasir Mehmood,"

              Defendant.

- - - - - - - - - - - - - - - - -X

05-1440M

C O M P L A I N T

(Title 21 U.S.C. § 841)

EASTERN DISTRICT OF NEW YORK, SS:

    ANDREW ARTHURTON, being duly sworn, deposes and states that he is a Special Agent of the United States Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

    Upon information and belief, on or about June 2, 2005 within the Eastern District of New York and elsewhere, the defendant NISHAM NASIR, also known as "Saleen" and "Nasir Mehmood," did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved 100 grams or more of a substance containing heroin, a Schedule I controlled substance heroin, in violation of 21 U.S.C. § 841(a)(1)).

    (Title 21, United States Code, Section 841(b)(1)(B)).

    The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all of the relevant facts and circumstances

1.  I have been a Special Agent with the DEA for approximately three years. Through my work with the DEA, I have participated in numerous narcotics trafficking investigations, during the course of which I have conducted or participated in surveillance, execution of search warrants, debriefings of informants and reviews of taped conversations and records. Through my training, education and experience, I have become familiar with the manner in which narcotics are smuggled into, and distributed throughout, the United States and the efforts of persons involved in such activities to avoid detection by law enforcement.

2.  The facts set forth in this affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, members of the DEA. Furthermore, in portions of this affidavit that describe surveillance, all surveillance was conducted by officers assigned to the DEA. The observations of the involved law enforcement officers have been related to me to supplement the activities that I personally observed.

3.  In late May 2005, DEA New York Field Division agents became involved in an investigation into a Pakistani narcotics smuggling organization operating in New York City and elsewhere.

---

of which I am aware.

3

4. During the course of the investigation, an undercover DEA agent ("UC") posed as a narcotics trafficker who could facilitate the delivery of heroin from New York to other regions of the United States. The UC was contacted by the defendant NISHAM NASIR, also known as "Saleen" and "Nasir Mehmood," and engaged in several telephone conversations on or about June 2, 2005. All of these calls were placed from an unidentified number to the main number of the Days Inn Hotel, located at 437 39th Street in Brooklyn, New York, and then forwarded to room 401, the room in which the UC was located on that date.

5. During the first two phone calls, the defendant NISHAM NASIR, also known as "Saleen" and "Nasir Mehmood," and the UC discussed the transfer of heroin from NISHAM NASIR to the UC on June 2, 2005.[2] Specifically, during the calls, the UC and NISHAM NASIR agreed to meet in the lobby of the Days Inn Hotel at approximately 6:30 p.m. on June 2, 2005. Based on these calls, your affiant and other DEA New York Field agents established surveillance at the Days Inn Hotel. Agents observed the UC in the lobby at the Days Inn Hotel at approximately 6:30 p.m. on June 2, 2005. The UC was observed exiting the lobby on foot and meeting with the defendant NISHAM NASIR in the parking lot of the

---

[2] The third call from defendant NISHAM NASIR was an inquiry about a possible future working relationship with the UC.

4

Days Inn Hotel. During the meeting, agents observed NISHAM NASIR provide a weighted bag to the UC. The defendant then departed the location in a purple mini-van, bearing New York license plate number DBV7190, with an unidentified female. A review of New York Department of Motor Vehicles records reveals that the license plate is registered to NISHAM NASIR at 517 Atlantic Avenue, Brooklyn, NY 11217, and that NISHAM NASIR has a date of birth of November 3, 1961.

6. Following the meeting with NISHAM NASIR, the UC turned over the bag that the UC had obtained from NISHAM NASIR to the other DEA agents. The agents opened the bag and discovered men's clothing and a wrapped cardboard box. Inside of the cardboard box were multiple, individually sealed plastic bags containing approximately 600 grams of heroin. Based on my knowledge and experience, that amount of heroin is inconsistent with personal use and consistent with distribution. Subsequent laboratory analysis of the substance contained in the sealed plastic bags revealed that it was in fact heroin.

7. Agents then obtained a New York State driver's license photograph of the defendant NISHAM NASIR. This photograph depicts the same Pakistani male who delivered the package of heroin to the UC on June 2, 2005, namely the defendant NISHAM NASIR.

5

WHEREFORE, your deponent respectfully requests that the defendant NISHAM NASIR, also known as "Saleen" and "Nasir Mehmood," be dealt with according to law.

ANDREW ARTHURTON
Special Agent
U.S. Drug Enforcement
Administration

Sworn to before me this
16th day of November, 2005

UNITED                              DGE
EASTERN